### In re U.S.A. INNS OF EUREKA SPRINGS, ARKANSAS, INC., Debtor.

### Claude R. JONES, Plaintiff–Appellant,

v.

### UNITED SAVINGS AND LOAN ASSOCIATION, Defendant–Appellee.

No. 93–1631.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1993.

Decided Nov. 4, 1993.

Rehearing Denied Dec. 7, 1993.

Steven Bruce Davis, Harrison, AR, argued for plaintiff-appellant.

Norman E. Beal, Kansas City, KS, argued (Paul T. Fullerton, Kansas City, MO, and Gail–Inman–Campbell of Harrison, AR, on the brief), for defendant-appellee.

Before HANSEN, Circuit Judge, LAY and BRIGHT, Senior Circuit Judges.

LAY, Senior Circuit Judge.

The trustee of the bankruptcy estate of the U.S.A. Inns of Eureka Springs, Arkansas, Inc. (the "U.S.A. Trustee") appeals the judgment of the district court holding that certain preferential payments made by the debtor to United Savings and Loan Association ("United") in the ninety days preceding the debtor's bankruptcy filing were excepted from the trustee's avoidance power under the "ordinary course of business" exception of 11 U.S.C. § 547(c)(2).

Prior to bankruptcy, U.S.A. Inns of Eureka Springs, Arkansas ("U.S.A. Inns") assumed liability under an existing promissory note in favor of United. The promissory note, in the original principal amount of $2,700,000, called for repayment in equal monthly installments in the sum of $27,-940.00, due on the 30th day of each month. When U.S.A. Inns filed bankruptcy, United's claim against the debtor totaled $2,815,037.65 and was secured by collateral with a fair market value of $2,620,000.00. The U.S.A. Trustee brought suit against United to recover certain payments made by the debtor to United during the ninety days preceding the debtor's bankruptcy filing. The debtor's payments were irregular as to both time and amount, and were never in the amount of the full monthly installment.[1] The parties stipu-

---

1. The parties stipulated that during the ninety   day period prior to the filing of the bankruptcy

lated to the preferential nature of the payments, conceding that the requirements of § 547(b) were satisfied, but contested whether the payments were excepted from avoidance as having been made in the ordinary course of business and according to ordinary business terms under 11 U.S.C. § 547(c)(2). The bankruptcy court[2] held that United proved the transfers satisfied the requirements of subsections (c)(2)(A) and (c)(2)(B) in that the debts were incurred and the payments were made by the debtor in the ordinary course of business of the debtor and United. The bankruptcy court concluded, however, that United did not produce any evidence on the issue of whether the payments had been made according to ordinary business terms under 11 U.S.C. § 547(c)(2)(C) and thus had failed to prove one of the three essential elements of § 547(c)(2). The bankruptcy court granted judgment for the U.S.A. Trustee in the amount of $63,000.00. *See Jones v. United Sav. & Loan Ass'n (In re U.S.A. Inns of Eureka Springs, Arkansas, Inc.)*, 151 B.R. 486 (Bankr.W.D.Ark.1992).

On appeal, the United States District Court for the Western District of Arkansas[3] reversed the bankruptcy court's decision holding that the bankruptcy court erred in requiring objective evidence of industry practice under § 547(c)(2)(C) and, in the alternative, that the bankruptcy court's finding that United had produced no evidence sufficient to carry its burden under § 547(c)(2)(C) was clearly erroneous. *See Jones v. United Sav. & Loan Ass'n (In re U.S.A. Inns of Eureka Springs, Arkansas, Inc.)*, 151 B.R. 492 (W.D.Ark.1993). On the basis of the district court's alternative holding, we affirm.

*Section 547(c)(2)(C)*

Section 547(b) provides that transfers made by the debtor in the ninety days pre-

ceding the petition for bankruptcy may be avoided by the trustee in bankruptcy as a "preference." However, the Bankruptcy Code permits the transferee of a preferential payment to prevent the avoidance by satisfying the three requirements set forth in § 547(c):

> (c) the trustee may not avoid under this section a transfer—
>
> .     .     .     .     .
>
> (2) to the extent that such transfer was—
>
>> (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
>>
>> (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
>>
>> (C) made according to ordinary business terms.

11 U.S.C. § 547(c)(2).

■ For a payment to qualify under the exception of § 547(c)(2), the transferee must prove by a preponderance of the evidence the three statutory elements. *See* 11 U.S.C. § 547(g). First, under subsection (c)(2)(A), the transferee must show that the debtor incurred the underlying debt in the ordinary course of business of the debtor and the transferee. The bankruptcy court held, and the parties do not dispute, that United satisfied this requirement. Second, under subsection (c)(2)(B), the transferee must show that the debtor made the transfer in the ordinary course of business or financial affairs of the *debtor and the transferee*. This court has indicated that " 'there is no precise legal test which can be applied' in determining whether payments by the debtor during

petition on October 10, 1990, the debtor made the following payments to United:

| Date | Amount |
| --- | --- |
| 7/14/89 | $ 6,538.45 |
| 7/21/89 | 6,461.55 |
| 7/26/89 | 7,000.00 |
| 8/01/89 | 1,845.37 |
| 8/01/89 | 11,154.63 |
| 8/08/89 | 2,642.19 |
| 8/17/89 | 7,357.81 |
| 8/18/89 | 966.30 |
| 8/18/89 | 5,233.70 |
| 8/25/89 | 3,800.00 |
| 9/01/89 | 10,000.00 |
| Total | $63,000.00 |

2. The Honorable James G. Mixon, United States Bankruptcy Judge for the Western District of Arkansas.

3. The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas.

the 90–day period were 'made in the ordinary course of business'; 'rather, th[e] court must engage in a "peculiarly factual" analysis.'"[4] *Lovett v. St. Johnsbury Trucking,* 931 F.2d 494, 497 (8th Cir.1991) (citations omitted). Relying upon the *Lovett* case, the bankruptcy court held that United satisfied this requirement as well since the payments conformed to the usual practice between the parties. Finally, under subsection (c)(2)(C), the transferee must show that the payment was made according to ordinary business terms. The bankruptcy court concluded that United failed to carry its burden of proof on this element of § 547(c)(2). The bankruptcy court stated that subsection (c)(2)(C) "requires an objective determination whether the payments are ordinary in relation to the standards prevailing in the relevant industry." *In re U.S.A. Inns,* 151 B.R. at 491 (citations omitted). The bankruptcy court held that United presented no evidence that the late note payments were so common within the savings and loan industry that it could be considered an ordinary business practice and therefore that United had failed to prove that the payments were made according to ordinary business terms. On this basis, the court entered judgment against United for the $63,000 in preferential payments.

On appeal, the district court reversed the bankruptcy court on the grounds that, first, the bankruptcy court erred in interpreting the requirements of § 547(c)(2)(C), and second, that the bankruptcy court's finding that United failed to prove the payments were made according to ordinary business terms was clearly erroneous. The district court held that the bankruptcy court applied the wrong standard under the law of this circuit in requiring an objective showing that the payments were made according to ordinary business terms of the industry in general. The district court stated that this circuit "effectively has ignored the distinction between subsection (c)(2)(B) and (c)(2)(C), con-

cluding that both subsections were satisfied so long as the late payments were consistent with the course of dealings between *the debtor and creditor."* *In re U.S.A. Inns,* 151 B.R. at 498 (emphasis added) (citations omitted). In reaching this conclusion, the district court relied upon the language in *Lovett v. St. Johnsbury Trucking,* 931 F.2d 494 (8th Cir.1991), which stated as follows:

> International's payments to St. Johnsbury during the 90–day period were made "according to ordinary business terms" because the manner, form, and timing of these payments were consistent with the practice both parties followed previously. As noted, the record shows that International regularly and frequently sent St. Johnsbury checks covering a number of invoices for services rendered. The fact that most of the payments were not made within 30 days is, for the reasons given in Part II.B., not inconsistent with their having been "made according to ordinary business terms."
>
> To the extent, if any, that subsection (c)(2)(C) requires comparison between the payment record of the particular debtor and the general practice in the industry regarding the time of payment, St. Johnsbury introduced testimony by two of its officials that it is "common" in the trucking industry—even when 30–day payment terms are required by contract—for payments "to be made over a 30–day period" (i.e., after 30 days from the date of the invoice) and that it is "[v]ery common" in the industry "that people pass the 30 day period." In the absence of any contrary evidence, this was sufficient to carry whatever burden St. Johnsbury may have had on this issue.

*Id.* at 499.

On this basis, the district court found that under the *Lovett* decision no independent evidence of ordinary business terms within the industry is necessary to satisfy subsection (c)(2)(C).

---

4. The purpose of the ordinary course of business exception is reflected in its legislative history: "The purpose of this exception is to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." S.Rep. No. 989, 95th Cong., 2d Sess. 88 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5874; H.R.Rep. No. 595, 95th Cong., 1st Sess. 373 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6329.

The district court's interpretation of *Lovett* places that decision at odds with the decisions of at least three other circuits that require an independent, objective standard of the practices of the relevant industry be applied under (c)(2)(C). *See In re Tolona Pizza Prod. Corp.*, 3 F.3d 1029, 1033 (7th Cir. 1993) (holding that the creditor must show that the payment he received was made in accordance with the ordinary business terms in the industry); *Logan v. Basic Distribution Corp. (In re Fred Hawes Organization, Inc.)*, 957 F.2d 239, 243–44 (6th Cir.1992) (holding that each of the three independent elements must be satisfied and finding that (c)(2)(C) requires objective evidence of industry standards); *WJM, Inc. v. Massachusetts Dep't of Pub. Welfare*, 840 F.2d 996, 1010–11 (1st Cir.1988) (holding that each of the three distinct subsections must be established by the creditor); *but see J.P. Fyfe, Inc. v. Bradco Supply Corp.*, 891 F.2d 66, 69, 71 n. 5 (3d Cir.1989) (holding that a creditor must prove by a preponderance of the evidence the "three statutory conjunctive elements," yet indicating that "[t]here are different views among the courts as to whether the test of what constitutes 'ordinary business terms' is determined by looking to the relevant industry standards or to the terms and practices normally employed by the debtor and creditor," and endorsing the district court's approach of looking to "the course of business between the parties"); *Marathon Oil Co. v. Flatau (In re Craig Oil Co.)*, 785 F.2d 1563, 1566 (11th Cir.1986) (discussing "ordinary course of business" and "according to ordinary business terms" as though they might be satisfied by the same standard). The district court did not "endorse [the *Lovett*] interpretation of subsection (c)(2)(C) as the more logical or better reasoned of the two views in light of the statute's construction," but felt bound under *Lovett* to find that the bankruptcy court erred in its interpretation of (c)(2)(C) by requiring objective proof of conformity with industry practices. We disagree with the interpretation that the district court has placed upon the *Lovett* decision. The *Lovett* court explicitly left open the question of what proof was required under subsection (c)(2)(C) and inferentially endorsed the view that subsection (c)(2)(C) re-

quires an objective standard. The Sixth Circuit set forth its analysis of this issue in the case of *Logan v. Basic Distribution Corp. (In re Fred Hawes Org., Inc.)*, 957 F.2d 239 (6th Cir.1992), as follows:

> The two subsections of § 547(c)(2) under review comprise a subjective and objective component respectively. The subjective prong (subsection (B)) requires proof that the debt and its payment are ordinary in relation to other business dealings between *that* creditor and *that* debtor. The objective prong (subsection (C)) requires proof that the payment is ordinary in relation to the standards prevailing in the relevant industry.

*Id.* at 244 (citations omitted). The Sixth Circuit panel found that "Congress clearly intended to establish separate, discrete, and independent requirements which a creditor would have to fulfill to prevent avoidance.... [and] to hold otherwise would not only ignore the clear language of the statute, but would effectively render subsections (B) and (C) superfluous to each other." *Id.* Recently, the Seventh Circuit indicated that "the most important thing is not that the dealings between the debtor and the allegedly favored creditor conform to some industry norm but that they conform to the norm established by the debtor and the creditor in the period before ... the preference period," but nonetheless, the court expressed its "natural reluctance to cut out and throw away one-third of an important provision of the Bankruptcy Code." *See Tolona Pizza*, 3 F.3d at 1032. After identifying the evidentiary and business-related functions that subsection (c)(2)(C) serves, the *Tolona Pizza* court held that a creditor must show that the preferential payments he received were made in accordance with the ordinary business terms in the industry, a separate and discrete inquiry from the practice between the parties. *Id.*

We feel these cases provide the proper interpretation of the statute. We do not read *Lovett* as requiring the law to be otherwise. We, therefore, disagree with the district court and endorse the bankruptcy court's analysis as to the requirement of proving an objective industry practice under subsection (c)(2)(C). However, for reasons

we now set forth, we affirm the district court's findings on the basis of the district court's alternative holding.

*Objective Evidence*

■ The bankruptcy court, in holding that an objective standard of industry practice was required, reviewed the evidence and held that there was no evidence to sustain United's burden of proof that the late payment practice between the debtor and the creditor was an industry-wide practice. In an alternative holding, the district court found that there was evidence similar to that presented in *Lovett,* proven by United, and that if an objective standard was required there was sufficient evidence to carry whatever burden United may have had on the issue of industry standards in ordinary business terms. Our standard of review is the same as that used by the district court. We review the bankruptcy court's factual findings under the clearly erroneous standard. *In re Commonwealth Cos., Inc.,* 913 F.2d 518, 521 (8th Cir.1990). This court views "the bankruptcy court decision unfettered by the district court's determinations." *In re Brown,* 951 F.2d 564, 567 (3d Cir.1991). There is testimony in the case by the Chairman of the Board, President, and Chief Executive Officer of United, J.C. Benage, to satisfy the burden imposed on United by subsection (c)(2)(C). Mr. Benage testified that it is regular practice in the savings and loan industry to work with delinquent customers as long as some type of payment is forthcoming, and that the Office of Thrift Supervision directed United to work with delinquent customers in a manner that conformed with industry-wide standards. Benage testified that the manner in which U.S.A. Inns paid United "could be ordinary on those accounts ... where there is default, delinquency and there is a workout process," and thus that in dealing with U.S.A. Inns on a late payment basis, United was in accordance with ordinary business terms in the savings and loan industry for this type of real estate trouble loan. Benage similarly testified that United was encouraged and directed by regulatory authorities to work with customers in the "so-called real estate crisis that is going on across the country."

■ We hold that the bankruptcy court's finding that United had produced no evidence sufficient to carry its burden under subsection (c)(2)(C) was clearly erroneous. What constitutes "ordinary business terms" will vary widely from industry to industry. In this case, Benage testified that "probably eight to ten percent" of United's accounts were on a similar pay schedule as U.S.A. Inns, but that working with delinquent customers as long as some type of payment was forthcoming was common industry practice. Subsection (c)(2)(C) does not require a creditor to establish the existence of some uniform set of business terms within the industry in order to satisfy its burden. It requires evidence of a prevailing practice among similarly situated members of the industry facing the same or similar problems. The legislative history reveals only that the purpose of § 547(c)(2) is to "discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." H.R.Rep. No. 595, 95th Cong., 1st Sess. 373 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6329. In light of the statute's construction and its legislative history, we feel the focus of subsection (c)(2)(C) should be on whether the terms between the parties were particularly unusual in the relevant industry, and that evidence of a prevailing practice among similarly situated members of the industry facing the same or similar problems is sufficient to satisfy subsection (c)(2)(C)'s burden. We agree with the Seventh Circuit's formulation that " 'ordinary business terms' refers to the range of terms that encompasses the practices in which firms similar in some general way to the creditor in question engage, and that only dealings so idiosyncratic as to fall outside that broad range should be deemed extraordinary and therefore outside the scope of subsection (C)." *Tolona Pizza,* 3 F.3d at 1033. We find that Benage's testimony was sufficient to satisfy United's burden of proving industry-wide practice dealing with real estate trouble loans. Benage's testimony was sufficient evidence that United was following the prevailing practice among similarly situated savings and loans with delinquent customers to satisfy subsection (c)(2)(C)'s burden. The terms on which United dealt with U.S.A. Inns were not so "idiosyncratic"

or "extraordinary" as to fall outside the broad scope of subsection (c)(2)(C). On this basis we find that although the district court erred in its interpretation of *Lovett*, United nonetheless has carried its burden of proof of demonstrating conformity with industry practice in dealing with late loan payments, and it has satisfied the objective requirement of subsection (c)(2)(C) by showing that such late loan payments are common within the savings and loan industry and that it is considered ordinary business practice.

On the basis of the above analysis, we find that the district court judgment should be affirmed.