# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-1154

_____

| | | |
|---|---|---|
| In re: Gateway Pacific Corp., | * | |
| | * | |
| Debtor. | * | |
| _____ | * | |
| | * | |
| Official Plan Committee, formerly | * | |
| known as Official Unsecured Creditors | * | |
| Committee, | * | |
| | * | Appeal from the United States |
| Appellee, | * | Bankruptcy Appellate Panel. |
| | * | |
| Gateway Pacific Corp., doing business | * | |
| as Buffalo Tool, | * | |
| | * | |
| v. | * | |
| | * | |
| Expeditors International of Washington, | * | |
| Inc., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  June 8, 1998

Filed:  September 1, 1998

_____

Before WOLLMAN and MURPHY, Circuit Judges, and FENNER,[1] District Judge.
_____

WOLLMAN, Circuit Judge.

Expeditors International of Washington, Inc. (Expeditors) appeals from the decision of the Bankruptcy Appellate Panel affirming the bankruptcy court's[2] decision that certain payments made by Gateway Pacific Corporation (Debtor) to Expeditors were avoidable under the Bankruptcy Code, 11 U.S.C. § 547. We affirm.

## I.

Debtor was engaged in the business of selling tools, most of which were imported from Asia. Expeditors contracted to act as Debtor's freight forwarder and customs broker. As part of these services, Expeditors procured shipment of the goods through air and shipping lines, advanced customs duties for Debtor's shipments, and secured customs clearance for the goods.

Debtor and Expeditors began their business relationship in the summer of 1993. Expeditors extended Debtor a $25,000 credit line, which was later increased to $60,000. On October 5, 1993, Debtor submitted a credit application to Expeditors that included the following provision: "[Expeditors] shall have a general lien on any and all property . . . of [Debtor] in its possession, custody or control or en route, for all claims for charges, expenses or advances incurred by [Expeditors] in connection with any shipments of [Debtor]." The agreement further provided that Debtor would make payment to Expeditors within fifteen days of the date of any invoice.

---

[1]The HONORABLE GARY A. FENNER, United States District Judge for the Western District of Missouri, sitting by designation.

[2]The Honorable Barry S. Schermer, United States Bankruptcy Judge for the Eastern District of Missouri.

Expeditors and Debtor continued their business relationship for approximately two years. During that time, Expeditors generally made two to three shipments to Debtor per week. Each shipment was accompanied by an invoice containing a fifteen-day payment term and a lien provision similar to the conditions of the credit agreement. Nevertheless, Debtor almost never paid within these terms. As it did with all of its slow-paying customers, Expeditors made regular telephone calls to Debtor seeking payment. In seeking payment, however, Expeditors assessed no interest or late charges, started no collection actions, and made no threats to withhold goods. Eventually, the parties developed a practice whereby Expeditors would release goods to Debtor after payment of a prior invoice. The amount of goods released generally exceeded the amount of payment.

On August 30, 1995, Debtor filed a petition seeking Chapter 11 bankruptcy protection. At the time of the filing, Debtor still owed Expeditors more than $40,000, a sum that Expeditors sought as an unsecured claim in the bankruptcy. The United States Trustee appointed an unsecured creditor's committee, which brought this action pursuant to 11 U.S.C. § 547(b) to recover $96,797.30 in transfers made from Debtor to Expeditors during the ninety-day period preceding the bankruptcy filing.

In response, Expeditors asserted three defenses: (1) ordinary course of business (11 U.S.C. § 547(c)(2)); (2) contemporaneous exchange (11 U.S.C. § 547(c)(1)); and (3) new value (11 U.S.C. 547(c)(4)). The parties stipulated that all of the payments were preferential under 11 U.S.C. § 547(b) and that $42,661.71 was protected from avoidance by the new value defense. That left the ordinary course of business and contemporaneous exchange defenses for trial.

The bankruptcy court rejected Expeditors' contemporaneous exchange defense and found that four of the twenty-eight preferential transfers were made in the ordinary course of business. See Official Unsecured Creditors Comm. v. Expeditors Int'l of Wash. Inc. (In re Gateway Pacific Corp.), 205 B.R. 164, 167-69 (Bankr. E.D. Mo.

1997). Accordingly, the court entered judgment against Expeditors for $40,577.31. As indicated above, the judgment was affirmed by the Bankruptcy Appellate Panel. See Official Plan Comm. v. Expeditors Int'l of Wash. Inc. (In re Gateway Pacific Corp.), 214 B.R. 870, 877 (B.A.P. 8th Cir. 1997).

## II. Ordinary Course of Business

Applying the same standards as the Bankruptcy Appellate Panel, we review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. See Hartford Underwriters Ins. Co., v. Magna Bank, N.A. (In re Hen House Interstate, Inc.), No. 97-3859, slip op. at 4 (8th Cir. July 27, 1998).

Section 547(b) of the Bankruptcy Code provides that transfers made by the debtor during the ninety-day period preceding the filing of a petition for bankruptcy may be avoided in bankruptcy as a "preference." See 11 U.S.C. § 547(b). Avoidance may be prevented, however, if the transfer was:

    (A) in payment of a debt incurred by the debtor in the ordinary course
of business or financial affairs of the debtor and the transferee;

    (B) made in the ordinary course of business or financial affairs of the
debtor and the transferee; and

    (C) made according to ordinary business terms[.]

11 U.S.C. § 547(c)(2). To prevail on this issue, Expeditors must prove the existence of the three statutory elements by a preponderance of the evidence. See 11 U.S.C. § 547(g); Jones v. United Sav. & Loan Ass'n (In re U.S.A. Inns of Eureka Springs, Arkansas, Inc.), 9 F.3d 680, 682 (8th Cir. 1993). Because the parties agree that Expeditors has met the first and third requirements of this defense, we need decide only

whether the bankruptcy court erred in finding that the transfers were not made in the ordinary course of business.

"'There is no precise legal test which can be applied' in determining whether payments by the debtor during the 90-day period were 'made in the ordinary course of business'; 'rather, the court must engage in a 'peculiarly factual' analysis.'" Lovett v. St. Johnsbury Trucking, 931 F.2d 494, 497 (8th Cir. 1991) (quoting In re Fulghum Constr. Corp., 872 F.2d 739, 743 (6th Cir. 1989)). The controlling factor is whether the transactions between the debtor and the creditor, both before and during the ninety-day period, were consistent. See Lovett, 931 F.2d at 497. "[T]he analysis focuses on the time within which the debtor ordinarily paid the creditor's invoices, and whether the timing of the payments during the 90-day period reflected 'some consistency' with that practice." Id. at 498.

The record reflects that during the time preceding the preferential period, as well as during the preferential period itself, Debtor consistently made tardy payments with company checks, paid the invoices in full, and was not penalized for its slow payments. When late payments were the standard course of dealing between the parties, they are also the ordinary course of business during the preference period. See id. at 498; In re of Tolona Pizza Prods. Corp., 3 F.3d 1029, 1032 (7th Cir. 1993) ("[A] 'late' payment really isn't late if the parties have established a practice that deviates from the strict terms of their written contract"). After a detailed examination of Debtor's payment history, however, the bankruptcy court concluded that a major portion of the transfers made during the ninety-day period were not within the ordinary course of business. The stipulated evidence established that during the nine months preceding the preference period, the median time that elapsed between the date of invoice and the date of payment was thirty-five days. During the preference period this number increased to fifty-four days, or a 54% increase.

The bankruptcy court noted that during the nine months preceding the preference period, only nine of approximately 155 payments were more than fifty days old, while twenty-four of the twenty eight payments during the preference period were at least fifty or more days old. The court concluded from this fact that any payments made during the preference period that were at least fifty days old were not made within the ordinary course of business.

Expeditors contends that the other consistencies within the relationship are sufficient to overcome the inconsistent payment intervals. We do not agree. The bankruptcy court did not, as Expeditors argues, arbitrarily create a "bright line" test of fifty days. Rather, carefully following the analytical framework set forth in Lovett, the bankruptcy court noted the significant change in the Debtor's payment pattern and concluded that the irregular payments were not within the section 547(c)(2) exception. We find no error in the bankruptcy court's decision.

## III. Contemporaneous Exchange

Expeditors also maintains that the transfers are protected by the contemporaneous exchange exception found in 11 U.S.C. § 547(c)(1). As noted above, Expeditors eventually began the practice of delaying the release of Debtor's shipments until it received payment on prior invoices. Expeditors contends that this practice, the general lien provisions of both the credit agreement and the invoices, and general principles of commercial law created a security interest in the goods. Arguing that it released the security interest in exchange for payment, Expeditors maintains that the transaction was a contemporaneous exchange for value.

Section 547(c)(1) provides:

The trustee may not avoid under this section a transfer --

(1) to the extent that such transfer was --

   (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

   (B) in fact a substantially contemporaneous exchange[.]

Id.

To establish its contemporaneous exchange defense, Expeditors must demonstrate that: (1) both Debtor and Expeditors intended the release of the alleged security interest to be a contemporaneous exchange; (2) the exchange was in fact contemporaneous; and (3) the exchange was for new value. See Tyler v. Swiss Am. Sec., Inc. (In re Lewellyn & Co., Inc.), 929 F.2d 424, 427 (8th Cir. 1991).

"'The critical inquiry in determining whether there has been a contemporaneous exchange for new value is whether the parties intended such an exchange.'" Id. at 428 (quoting In re Spada, 903 F.2d 971, 975 (3d Cir. 1990)). The existence of contemporaneous intent is a question of fact, the determination of which we review for clear error. See In re Lewellyn & Co., Inc., 929 F.2d at 428.

The court rejected Expeditor's section 547(c)(1) defense after crediting the testimony of Robert Lawson, Debtor's former president, chief operating officer, and chief financial officer, who testified that Expeditors had not discussed any claimed security interest with him.

Characterizing Lawson's testimony as "irrelevant," Expeditors argues that the bankruptcy court erroneously credited his testimony and disregarded the documents and the conduct of the parties. We do not agree. Lawson's lack of knowledge regarding a contemporaneous exchange shows the absence of any intent on the parties' part to

create a contemporaneous exchange. Moreover, Expeditors made a weak showing of its own intent. It did not assert the alleged security interest in the bankruptcy proceedings, but rather sought to establish its claim as an unsecured creditor. Accordingly we conclude that the bankruptcy court did not err in finding that Expeditors failed to demonstrate contemporaneous intent.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.