**In re SHALOM HOSPITALITY INC., Debtor.**

**Sheryl Schnittjer, Trustee, Plaintiff,**

**v.**

**Alliant Energy Company and Interstate Power & Light Co., Defendants.**

Bankruptcy No. 02–00276.
Adversary No. 02–9122.

United States Bankruptcy Court, N.D. Iowa.

May 14, 2003.

Daniel M. Eliades, Forman, Holt & Eliades, LLC, Rochelle Park, NJ, Mark D. Walz, Des Moines, IA, for Days Inn Worldwide, Inc.

Thomas H. Burke, Whitfield & Eddy, P.L.C., Des Moines, IA, for Firstar Bank N.A.

Iowa Department of Revenue, Des Moines, IA, for Iowa Department of Revenue and Finance, Collections Section, Langerman Architects, PC, and David Laugerman.

Wesley B. Huisinga, pro se, Thomas P. Peffer, John M. Titler, Cedar Rapids, IA, for Maha–Vishnu Corporation, Shalom Hospitality, Inc.

William K. Shafer, Williamsburg, IA, for Safemark Systems, LP.

Eric W. Lam, Cedar Rapids, IA, for Sheryl Schnittjer.

Gay D. Pelzer, Iowa City, IA, for U.S. Bank, N.A.

## ORDER RE MOTION TO EXCLUDE EXPERT TESTIMONY

PAUL J. KILBURG, Chief Judge.

This matter came before the undersigned on April 16, 2003. Plaintiff/Trustee Sheryl Schnittjer was represented by Attorney Eric Lam. Defendants were represented by Attorney Verle Norris. After hearing arguments of counsel, the Court took the matter under advisement. The time for filing supplemental materials has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F).

### STATEMENT OF THE ISSUE

Trustee seeks to exclude testimony by Defendants' expert, Dr. Michael Ileo, in this preference action to recover $12,000 in prepetition payments. Defendants intend to present Dr. Ileo's testimony regarding calculation of the delinquencies in Debtor's utility payments as it relates to their "ordinary course of business" defense. Trustee argues Dr. Ileo's method of calculating the delinquency is not generally accepted in the community and is not the proper subject of expert testimony.

### STATEMENT OF THE CASE

The Court granted Trustee partial summary judgment on February 27, 2003. It found Trustee has proven all the elements of a preference under § 547(b). Debtor paid Defendants $12,000 within 90 days before the date of filing the petition, while it was insolvent. The only remaining issues are Defendants' defenses under § 547(c).

Defendants assert the payments were made in the ordinary course of business under § 547(c)(2). They also argue the payments were made for new value under § 547(c)(1) or § 547(c)(4). Defendants intend to offer testimony by Dr. Ileo regarding Debtor's delinquent payments as it relates to their "ordinary course of business" defense. He uses a "weighted days" calculation to analyze Debtor's delinquencies. Trustee calculates delinquencies based on a "calendar day" analysis. She asserts the "weighted days" calculation is not generally accepted in the utility industry. She also argues it is not relevant to the ordinary course of business defense and is not a proper subject for expert testimony. Trustee requests that Dr. Ileo's testimony be excluded from the record.

Defendants assert the weighted day analysis is a tool commonly employed in the public utility industry. They state, for example, that the Iowa Utilities Board has recognized the use of weighted days in lead-lag studies in general utility rate cases. Defendants argue calculating payment delinquencies by weighted days gives effect to the magnitude and duration of Debtor's delinquent payments.

### CONCLUSIONS OF LAW

This Court has discretion in ruling on the admissibility of expert testimony. *Excel Corp. v. Bosley,* 165 F.3d 635, 640 (8th Cir.1999). Federal Rule of Evidence 702 provides for the admission of expert testimony where it will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702.

■ The test for determining the appropriateness of expert testimony is "the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute."

■ *Pelster v. Ray*, 987 F.2d 514, 526 (8th Cir.1993) (quoting advisory committee's note to Fed.R.Evid. 702). Trial courts must serve a gatekeeping function to ensure that testimony of expert witnesses is both reliable and relevant before it is admitted. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). However, the judge's role as gatekeeper is not intended to take the place of the adversarial system. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 596, 113 S.Ct. 2786; *Waitek v. Dalkon Shield Claimants Trust*, 934 F.Supp. 1068, 1087 (N.D.Iowa 1996).

Rule 702 was amended in 2000 in response to *Daubert* and cases applying it such as *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). It affirms the trial court's role as gatekeeper and provides general standards for the trial court to use to assess the reliability and helpfulness of proffered expert testimony. Advisory Committee Notes to Rule 702. Rule 702 states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

■ Fed.R.Evid. 702. The proponent of the testimony has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. *Daubert*, 509 U.S. at 593, 113 S.Ct. 2786; Fed.R.Evid. 104(a).

■ Section 547(b) provides that a transfer made by the debtor in the ninety days preceding the bankruptcy petition may be recovered by the trustee in bankruptcy as a "preference." An exception to the trustee's power to avoid a preferential transfer is the "ordinary course of business" defense of § 547(c)(2). The transferee must prove by a preponderance of the evidence the three elements of this defense. *In re U.S.A. Inns*, 9 F.3d 680, 682 (8th Cir.1993). A trustee may not avoid a transfer as a preference under § 547(b) to the extent that such transfer was

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms.

11 U.S.C. § 547(c)(2). There is no precise legal test which can be applied to determine whether payments were made in the ordinary course of business. *U.S.A. Inns*, 9 F.3d at 682–83. Rather, the court must engage in a peculiarly factual analysis. *Id.* at 683.

■ The subjective prong found in § 547(c)(2)(B), requires proof that the

debt and its payment are ordinary in relation to other business dealings between that creditor and that debtor. In *Lovett v. St. Johnsbury Trucking*, 931 F.2d 494, 498 (8th Cir.1991), the Circuit Court focused on the time within which the debtor ordinarily paid the creditor's invoices to determine whether the ordinary course of business defense was applicable. If late payments were the standard course of dealing between the parties, they shall be considered as within the ordinary course of business under § 547(c)(2). *Id.* at 498; *In re Gateway Pac. Corp.*, 153 F.3d 915, 917 (8th Cir.1998) (noting a significant change in the payment pattern during the preference period).

The objective prong of § 547(c)(2)(C) requires proof that the payment is ordinary in relation to the standards prevailing in the relevant industry. *U.S.A. Inns,* 9 F.3d at 684. Subsection (C) "ordinary business terms" refers to the range of terms "that encompasses the practices in which firms similar in some general way to the creditor in question engage, and that only dealings so idiosyncratic as to fall outside that broad range should be deemed extraordinary and therefore outside the scope of subsection (C)." *Id.* at 685.

Many courts have relied on expert testimony to establish industry practice as to the length of time it usually takes suppliers to be paid by customers, although expert testimony is not required. *In re Vogel Van & Storage, Inc.*, 210 B.R. 27, 35 n. 7 (N.D.N.Y.1997); *see also In re De-Mert & Dougherty, Inc.*, 232 B.R. 103, 110 (N.D.Ill.1999) (noting more than general testimony by an employee of the defendant is needed to prove "ordinary business terms" under § 547(c)(2)(C)). For example, a trustee's expert testified on the average length of time taken to collect outstanding trade debt in the airline industry in *In re Air South Airlines, Inc.*, 247 B.R. 153, 164 (Bankr.D.S.C.2000).

Testimony by Dr. Ileo was considered by a bankruptcy court in *In re Tennessee Valley Steel Corp.*, 201 B.R. 927, 933 (Bankr.E.D.Tenn.1996). In that case, he testified regarding the patterns of billing and payment between the debtor and a gas and water utility company in a preference action. *Id.* The court considered his testimony on the "industry standard" element of § 547(c)(2)(C) in the utility company's "ordinary course of business" defense. *Id.* at 938–39.

Trustee cites *In re Laclede Steel Co.*, 271 B.R. 127 (8th Cir. BAP 2002), in her argument that the acceptable calculation in this context is done by calendar day averages, rather than by "weighted" day averages. The court in *Laclede Steel,* however, acknowledges that factors other than a debtor's payment history may be considered according to their appropriate weight under the circumstances. *Id.* at 132. It does not discuss the appropriateness of either calendar day or weighted day analyses. *Id.*

Where more than one method of testing is acceptable, use of one method rather than another acceptable method is not necessarily grounds to exclude expert testimony. *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 160 (3d Cir.1999). In *In re Lan Yik Foods Corp.*, 185 B.R. 103, 112 n. 22 (Bankr.E.D.N.Y.1995), the court calculated time periods using a "weighted" average in a § 547(c) action to recover preferential payments from a supplier of Chinese food products. It stated that "[a] 'weighted' time calculation takes into consideration the percentage of the debt paid by each individual payment and results in a more accurate representation as to the age of a specific invoice." *Id.*

## ANALYSIS

 Based on the foregoing, the Court concludes Dr. Ileo's testimony may assist the Court to determine a peculiarly factual issue. His analysis of ordinary business terms in the utility industry based on a "weighted day" calculation is acceptable to assist the Court in making a determination under § 547(c)(2)(C). Defendants have shown that the "weighted day" calculation is used in lead-lag studies in Iowa. *See, e.g. In re Iowa Public Service Co.,* 1988 WL 391126 (Iowa U.B. June 17, 1988). Further, Dr. Ileo's similar testimony was accepted by another bankruptcy court on the same issue.

Trustee argues that Dr. Ileo's testimony should not be considered on the element of subsection (B) of § 547(c)(2). She argues that, the course of affairs between Defendants and Debtor under subsection (B) requires a different analysis than the analysis of industry standards under subsection (C). The Court disagrees. There is no justification for refusing to apply an industry standard method of calculation to Debtor's payment history to determine whether payments during the preference period were in the ordinary course of business between the parties under subsection (B). To the contrary, the Court believes such a calculation is appropriate and would be helpful in considering the standard course of dealing between the parties. As the "weighted day" analysis is accepted in the industry, it is helpful to determine the factual issues under subsection (B) even though Defendants themselves do not generally use this method in analyzing customer accounts.

**WHEREFORE,** Trustee's Motion to Exclude Expert Testimony is DENIED.

**FURTHER,** Defendants may offer the testimony of its designated expert, Dr. Michael Ileo, as to all the elements of its ordinary course of business defense to Trustee's preference complaint.