# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2984

_____

In re Bridge Information Systems, Inc.,    *
                                *

               Debtor.                     *
  *
  *
  *

_____    *
  *

Gulfcoast Workstation Corporation,    *
  *

               Appellant,             *
  *         Appeal from the United States
        v.                      *         District Court for the Eastern
  *         District of Missouri.

Scott P. Peltz, Plan Administrator on    *
behalf of Bridge Information Systems,    *
Inc.    *
  *

               Appellee.            *

_____

Submitted: June 12, 2006
Filed: June 23, 2006 (Corrected 6/28/06)

_____

Before COLLOTON, JOHN R. GIBSON and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Scott P. Peltz ("Peltz"), the court-appointed plan administrator in the jointly administered chapter 11 bankruptcy cases of Bridge Information Systems, Inc. and certain of its affiliates (collectively, "Bridge"), filed an adversary proceeding against Gulfcoast Workstation Corporation ("Gulfcoast"), seeking to avoid more than $2.155 million in alleged preferential transfers pursuant to Bankruptcy Code, 11 U.S.C. § 547. After a trial, the bankruptcy court[1] found that the payments at issue were preferential transfers and that Gulfcoast failed to establish a defense to the avoidance of the payments. Gulfcoast appealed and the district court[2] affirmed. For the reasons discussed below, we also affirm.

## I.    BACKGROUND

On February 15, 2001 (the "Petition Date"), Bridge filed for chapter 11 bankruptcy relief. Prior to the Petition Date, Bridge and Gulfcoast, both computer products resellers, bought and sold goods with one another on net-30 terms. As of the Petition Date, Bridge owed to Gulfcoast over $1 million and Gulfcoast owed to Bridge over $713,000. Gulfcoast commenced an adversary proceeding against Bridge, seeking court authority to offset its prepetition debts owed to Bridge against the prepetition amounts owed by Bridge to Gulfcoast.

On February 13, 2002, the bankruptcy court confirmed a joint plan of liquidation and appointed Peltz as plan administrator. As plan administrator, Peltz was authorized to pursue causes of action on behalf of the Bridge estates and their creditors, including actions to recover preferential transfers pursuant to Bankruptcy Code § 547.

---

[1]The Honorable David P. McDonald, United States Bankruptcy Judge for the Eastern District of Missouri.

[2]The Honorable Henry E. Autrey, United States District Court Judge for the Eastern District of Missouri.

On February 11, 2003, Peltz filed an adversary proceeding against Gulfcoast, seeking to avoid $2,155,105.80 in alleged preferential transfers made by Bridge to Gulfcoast in the 90 days prior to the Petition Date and to recover this amount from Gulfcoast. At trial, Gulfcoast argued that these payments were subject to the ordinary course defense provided under Bankruptcy Code § 547(c) and thus were excepted from avoidance. Peltz argued that the ordinary course defense did not apply because the transfers were not conducted pursuant to objectively ordinary business terms due to the use of remittance advice notations by Bridge with its payments. Specifically, when Bridge sent a payment to Gulfcoast, it included a remittance advice notation specifying against which invoice Gulfcoast should apply the proceeds. Gulfcoast complied with the remittance advice notations.

After a trial, the bankruptcy court found that Peltz established that the payments were preferential transfers and that Gulfcoast failed to establish that the use of remittance advice notations to direct the application of payments to specific invoices was ordinary within the computer resale industry. As a result, the bankruptcy court entered a judgment in favor of Peltz in the amount of $2,155,105.80.[3]

## II.  DISCUSSION

A preferential transfer is any transfer of an interest of the debtor in property "(1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was

_____

[3]The bankruptcy court consolidated for purposes of trial the still-pending setoff adversary proceeding with the preferential transfer adversary proceeding. After the trial, in a separate memorandum opinion, the bankruptcy court found that Gulfcoast was entitled to offset its prepetition debt to Bridge against Bridge's prepetition debt to Gulfcoast and to a secured claim in the amount of $713,677 under Bankruptcy Code § 506(a). Peltz appealed the order on the setoff memorandum opinion to the district court, which affirmed. Peltz did not further appeal the setoff issue.

insolvent; [and] (4) made...on or within 90 days before the date of the filing of the petition . . ." 11 U.S.C. § 547(b) (in relevant part). On appeal, Gulfcoast does not challenge the bankruptcy court's finding that, in light of the undisputed evidence, Peltz established that the transfers were preferential.

Preferential transfers are subject to avoidance by the trustee. 11 U.S.C. § 547(b). When a preferential transfer is avoided, the transferee generally must disgorge the amount of the transfer and return it to the debtor's estate. 11 U.S.C. § 550(a). However, the Bankruptcy Code provides an "ordinary course" defense to avoidance. A preferential transfer is excepted from avoidance if the transfer was: "(1) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee; (2) made in the ordinary course of business or financial affairs of the debtor and the transferee; and (3) made according to ordinary business terms." 11 U.S.C. § 547(c)(2). Establishing the ordinary course defense by a preponderance of the evidence is the transferee's burden. *Jones v. United Sav. & Loan Ass'n (In re USA Inns of Eureka Springs)*, 9 F.3d 680, 682 (8th Cir. 1993) (citations omitted).

The bankruptcy court held that Gulfcoast failed to establish the third prong of the ordinary course defense. This prong is an objective test that requires the transferee to prove that the business terms are in accordance with industry practice, not simply that they are in accordance with the practice between the debtor and the transferee. *Id.* at 684 (rejecting the district court's misinterpretation of *Lovett v. St. Johnsbury Trucking*, 931 F.2d 494 (8th Cir. 1991), and agreeing with the First, Third, Sixth, Seventh and Eleventh Circuits that a transferee is required under Bankruptcy Code § 547(c)(2)(C) to produce evidence of an "independent, objective standard of the practices of the relevant industry"). The bankruptcy court determined that Gulfcoast did not show that its use of remittance advice notations to direct the

application of payments to specific invoices was within objectively ordinary business terms.[4]

On appeal, Gulfcoast argues that the testimony of two of its own employees, Thomas Pyla, the comptroller, and Bradley Whitsett, the general manager and vice president, established that its use of remittance advice notations was according to objectively ordinary business terms. A transferee may use its own employees or officers to establish the third prong of the ordinary course defense. *Id.* at 685 (holding that the testimony of the transferee's CEO was sufficient); *St. Johnsbury Trucking*, 931 F.2d at 499 (holding that the transferee produced sufficient evidence of the industry-wide practice regarding timing of payments through the uncontroverted evidence of two of the transferee's employees). However, to establish the third prong of the ordinary course defense, the testimony of a transferee employee cannot be evidence merely of the practice between the transferee and the debtor; it must be "evidence of a prevailing practice among similarly situated members of the industry facing the same or similar problems." *Eureka Springs*, 9 F.3d at 685.

Gulfcoast points to no testimony in the record where its witness testified as to the common industry-wide practice regarding the use of remittance invoice notations to direct the application of payments to specific invoices, and our independent review

---

[4] The practice of using remittance advice notations to direct the application of payments to specific invoices, if outside the ordinary course of business, allows an impending bankruptcy debtor to give preferential prepetition treatment to certain creditors by disproportionately satisfying those creditors' debts. For example, the debtor could pay unusually large or late debts or pay an invoice that has not yet come due–all of which Bridge did for Gulfcoast in the 90 days before Bridge filed for bankruptcy relief. By doing so, the debtor favors one creditor over another in the last days before all creditors become subject to the priority treatment rules of the Bankruptcy Code and the pro rata distribution of the estate.

of the record reveals no such testimony.[5] Pyla testified on issues relating to the payment relationship between Gulfcoast and Bridge and, to a limited degree, to Gulfcoast's relationship with its other customers. However, he did not offer any testimony on the industry-wide use of remittance advice notations to direct the application of payments to specific invoices. Whitsett offered testimony on the issue of industry-wide practices related to payment terms and delinquency, but likewise offered no evidence on the use of remittance advice notations to direct the application of payments to specific invoices in the computer resale industry. Although both witnesses offered testimony on Gulfcoast's relationship with Bridge as well as on Gulfcoast's relationship with others in the industry, this does not constitute objective evidence of the industry-wide use of remittance advice notations to direct the application of payments to specific invoices. It merely is evidence of Gulfcoast's use of remittance advice notations in this fashion. *Cf. id.* at 685 (holding that the transferee met its burden under the third prong by providing evidence that not only were 8-10% of its accounts on a pay schedule such as that of the debtor, but also that "working with delinquent customers as long as some type of payment was forthcoming was *common industry practice*") (emphasis added); *St. Johnsbury Trucking*, 931 F.2d at 499 (holding that the transferee met its burden under the third prong by providing evidence that it "is 'common' *within the trucking industry*" for payments to be made more than 30 days after invoice under a contract with net-30 terms) (emphasis added). As such, Gulfcoast did not meet its burden of showing that, throughout the relevant computer resale industry, the use of remittance advice notations to direct the application of payments to specific invoices was an ordinary business term.

---

[5]In its briefing and at oral argument, Gulfcoast suggested that it and Bridge essentially were "the industry" and, thus, Gulfcoast's testimony regarding its practices with Bridge satisfied the "industry-wide" evidence requirement. However, we do not need to decide whether the relationship between a transferee and the debtor alone can constitute the "industry" for purposes of the third prong of the ordinary course defense because Gulfcoast failed to present evidence at trial to support this claim on appeal.

Gulfcoast also argues that the bankruptcy court erred as a matter of law by holding that, because Gulfcoast failed to establish that its use of remittance advice notations was within ordinary business terms, it failed to establish the third prong of the ordinary course defense. Gulfcoast claims that the bankruptcy court's analysis was "myopic," focusing only on the parties' use of remittance advice notations, rather than recognizing that other parts of their transactions may have been conducted according to objectively ordinary business terms. However, even if other terms of the Gulfcoast-Bridge relationship were objectively ordinary, this does not mitigate the fact that a key element of the relationship–the use of the remittance advice notations to direct the application of payments to specific invoices–was not shown to be an objectively ordinary business term. The bankruptcy court was not myopic, but was properly focused on the issue of whether the use of remittance invoice notations to direct the application of payments to specific invoices was outside ordinary business terms for the industry.

Finally, Gulfcoast argues that the bankruptcy court erred in finding that Gulfcoast abandoned its new value defense, another defense to avoidance available under Bankruptcy Code § 547(c). The bankruptcy court held that Gulfcoast conceded prior to trial that it could not produce sufficient evidence to establish a new value defense and thus abandoned this defense. The district court affirmed, noting that the only reference to a new value defense at trial was Gulfcoast's acknowledgment that the new value defense was the basis for its setoff claim asserted in a separate adversary proceeding, which was accompanied by an assurance from Gulfcoast that it would not seek to "double dip."[6]

---

[6]Double dipping occurs in this context when a creditor uses the debtor's unpaid, prepetition invoices both to offset the creditor's prepetition liability to the debtor under Bankruptcy Code § 553 and to establish new value to a preference action under Bankruptcy Code § 547. Peltz objected to Gulfcoast's initial efforts to double dip through the concurrently pending setoff adversary proceeding. He argued it was impermissible double counting, citing *In re Comptronix Corp*., 239 B.R. 357, 360 (Bankr. M.D. Tenn. 1999). Gulfcoast ultimately agreed not to attempt to double dip.

On appeal, Gulfcoast maintains that it never conceded that it could not establish a new value defense and that the lower courts misconstrued Gulfcoast's comments regarding double dipping. However, we do not need to decide whether Gulfcoast conceded pretrial that it could not establish the new value defense or that it otherwise affirmatively waived the defense. Even if the bankruptcy court erred, the error was harmless. A review of the record shows that Gulfcoast abandoned its new value defense at trial by failing to offer any evidence of the defense.

To establish the subsequent new value defense, a transferee must establish that the transfer "[was] to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor [that was] not secured by an otherwise unavoidable security interest . . . on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor." 11 U.S.C. § 547(c)(4). Although Gulfcoast asserted a new value defense pretrial, it made no attempt to prove this defense at trial. Rather, it is clear from the record that Gulfcoast's defense at trial rested on its asserted ordinary course defense. In fact, beyond Gulfcoast's acknowledgment in its opening statement that it would not seek to double-dip, it failed to address the new value defense at trial. No Gulfcoast witness testified on the new value defense. Gulfcoast did not introduce into evidence a subsequent advance rule chart, demonstrating the amount of each subsequent new value advance to Bridge and the corresponding preferential transfer. Although Gulfcoast argues on appeal that it provided such analysis in its pretrial briefing, such information is not evidence in the trial court record. The only admitted evidence to which Gulfcoast points in support of its purported new value defense is merely a chart demonstrating unpaid invoices and the average number of days between invoice and payment in the preference period–a chart used in support of Gulfcoast's asserted ordinary course defense–and copies of the correlating invoices. As such, we affirm the bankruptcy court's judgment on the ground that Gulfcoast abandoned any new value defense it may have had by failing to pursue such defense at trial. *See Harman v. Cook*, 191 F.3d 911, 921 n.9 (8th Cir. 1999) (citations omitted) (holding that this Court "review[s] judgments, not opinions, and we may affirm on any

ground supported by the record, whether . . . that ground was urged below or passed on by the district court").

## III. CONCLUSION

For the reasons discussed above, we affirm the bankruptcy court's judgment.

_____