**In re MEYER'S BAKERIES, INC., Debtor.**

**Richard L. Cox, Trustee, Plaintiff**

**v.**

**American Pan Company, Defendant.**

**Bankruptcy No. 4:05–bk–70837M.**
**Adversary No. 4:07–ap–07060.**

United States Bankruptcy Court,
W.D. Arkansas,
Texarkana Division.

May 8, 2008.

Richard L. Cox, Richard Cox, P.A., Hot Springs, AR, Thomas S. Streetman, Streetman & Meeks, PLLC, Crossett, AR, for Plaintiff.

Stan D. Smith, Mitchell Law Firm, Little Rock, AR, for Defendant.

### MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

On February 6, 2005, Meyer's Bakeries, Inc. (Debtor) filed a voluntary petition for relief under the provisions of Chapter 11 of the United States Bankruptcy Code. On March 23, 2006, the case was converted to Chapter 7, and Richard L. Cox (Trustee) was appointed Trustee.

On February 5, 2007, the Trustee filed this adversary proceeding against American Pan Company (American Pan) to recover two pre-petition transfers totaling $28,702.05 as preferential transfers pursuant to 11 U.S.C. § 547 (2005).[1] American Pan filed a timely answer denying the Trustee's allegations in general and raising the affirmative defense of ordinary course of business as provided in 11 U.S.C. § 547(c)(2)(A). Trial of the above-captioned matter was held in Texarkana, Arkansas, on February 1, 2008, after which the matter was taken under advisement. The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F). The following shall constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

### THE FACTS

The facts are not in dispute. American Pan is engaged in the business of selling equipment used in the commercial bakery industry such as commercial baking pans, bun pans, bread loaf pans, hot dog pans, and hamburger pans. (Tr. at 10 & 14.) American Pan markets its product to commercial bakeries such as Sara Lee, Inter-

---

1. This section was amended by the provisions of BAPCPA, Public Law No. 109–9, Section 409, but the amendments apply to cases filed after October 17, 2005. This case was filed before October 17, 2005, therefore, the amendments do not apply.

state Brands, and Klosterman's, as well as the Debtor. (Tr. at 10–11.) They are practically the sole manufacturer of commercial baking pans and have little competition within the United States. (Tr. at 11.) Their business activities are part of a broader industry of metal stamping. (Tr. at 11.) The product begins as big blocks of metal which are put through a series of presses resulting in the desired commercial baking pan. (Tr. at 11).

Generally speaking, American Pan's product is sold to customers on a credit term "net 30 days." (Tr. at 12.) However, American Pan seldom gets paid within 30 days. (Tr. at 12.) It is more common than not that payment is received beyond the 30 days. (Tr. at 12.) Some customers pay in 90 days and some will take up to 100 days to pay. (Tr. at 12.) Collection efforts usually commence when an invoice becomes overdue by 120 days. (Tr. at 12.)

American Pan's experience with the Debtor was that payment was received more than 30 days after the invoice date. (Tr. at 13.) American Pan did not engage in any unusual collection activity on the Debtor's account either in past years or in connection with invoices involved in this litigation, and was surprised when the bankruptcy case was filed. (Tr. at 13.)

During the 90–day period prior to the filing of the petition, the Debtor made two payments. (Ex. AP–3.) The first payment in the sum of $14,924.00 was credited by American Pan on December 23, 2004, and cleared the Debtor's bank account on December 27, 2004, in payment of Invoice No. 92814 dated October 6, 2004. (Pl.'s Ex. 2 & Ex. AP–3.) The second payment of $13,778.05 was credited by American Pan on January 12, 2005, and cleared the Debtor's bank on January 13, 2005, in payment of Invoice No. 92807 dated October 29, 2004. (Pl.'s Ex. 4 & Ex. AP–3.) Payment was due on both invoices 30 days from the date of the invoices.

## DISCUSSION

The parties stipulated that all of the elements are present to constitute a preferential transfer under 11 U.S.C. § 547(b), and that the only defense claimed by American Pan is the affirmative defense of ordinary course of business. (Tr. at 6–7.) This defense is found in 11 U.S.C. § 547(c)(2)(2005) as follows:

(c) The trustee may not avoid under this section of transfer—

(2) to the extent such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms[.]

■ A defendant asserting the provisions of Section 547(c)(2) has the burden of proof to establish the applicability of this section by a preponderance. *Official Plan Committee v. Expeditors International of Washington, Inc. (In re Gateway Pacific Corp.)*, 153 F.3d 915, 917 (8th Cir.1998); *Jones v. United Savings and Loan Assoc. (In re U.S.A. Inns of Eureka Springs, Arkansas, Inc.)*, 9 F.3d 680, 682 (8th Cir. 1993).

The Defendant in this case must prove by preponderance of the evidence that the payments to it were:

1. payment of a debt incurred by the debtor in the ordinary course of business of the debtor and defendant;

2. made in the ordinary course of business of the debtor and the defendant; and

3. made according to ordinary business terms.

11 U.S.C. § 547(c)(2)(2005); *In re Gateway Pacific Corp.*, 153 F.3d at 917;

*Peltz v. Merisel Americas, Inc. & MOCA (In re Bridge Information Systems, Inc.),* 383 B.R. 139, 149 (Bankr.E.D.Mo.2008).

Here, the evidence in this case establishes by uncontroverted evidence that all of the elements necessary to establish the defense of ordinary course of business have been satisfied.

■ The first element American Pan must prove is that the debt was incurred in the ordinary course of business of financial affairs of the Debtor and American Pan. The evidence is that the Debtor was a long standing and regular customer of American Pan which sold to the Debtor, on credit, baking pans for its use in the commercial baking business. American Pan was in the business of selling baking pans to businesses. The evidence leads to one conclusion that the debt was incurred in the ordinary course of business of the Debtor and the ordinary course of business of American Pan.

■ The second elements of Section 547(b)(2) requires proof that the transfers to American Pan were made in the ordinary course of business or financial affairs of the Debtor and American Pan. Factors to consider include the prior course of dealings between the parties, the timing and amount of the payment, and whether the payment resulted from pressure or any unusual activity by the creditor. 5 Collier's on Bankruptcy ¶ 547.04[2][a][B] at 547–60 (Alan N. Resnick & Henry J. Sommers et al. eds., 15th rev.2007). A payment that is made beyond invoice or contract terms may still be considered in the ordinary course if late payments were the standard course of dealings between the parties. *In re Gateway Pacific Corp.,* 153 F.3d at 917; *Lovett v. St. Johnsbury Trucking,* 931 F.2d 494, 497 (8th Cir.1991).

■ American Pan introduced evidence that the Debtor in this case made payments on average since 2001 between 46 and 130 days after the due date printed on the invoice with an average payment date of 71.80 days after the invoice was issued. (Ex. AP–1.) In the year preceding the date the petition was filed, the average date of payment was 60 days. (Ex. AP–3.) The two alleged preferential transfers occurred 78 and 75 days respectively after the invoice date which is very close to the average payment date since 2001. (Ex. AP–3.) American Pan has established that the Debtor's payments, even though consistently late according to the printed due date on the invoices still met the ordinary course of business exception of Section 547(c)(2) because late payments were the established practice between the parties. See *In re Tolona Pizza Products Corp.,* 3 F.3d 1029, 1032 (7th Cir.1993). The evidence is also undisputed that the payments were not the result of any activity or pressure from the creditor. See *Tolz v. Signal Capital Corp. (In re Mastercraft Graphics, Inc.),* 157 B.R. 914, 921 (Bankr.S.D.Fla. 1993).

■ The third element of Section 547(c)(2) requires American Pan to prove that the payments were made according to ordinary business terms. This section requires an objective determination as to whether payments are ordinary in relation to the standard prevailing in the relevant industry. *Gulfcoast Workstation Corp. v. Peltz (In re Bridge Information Systems, Inc.),* 460 F.3d 1041, 1044 (8th Cir.2006); *In re USA Inns of Eureka Springs,* 9 F.3d at 684; 5 Collier's on Bankruptcy ¶ 547.04[2][a][c] (Alan N. Resnick & Henry J. Sommers et al. eds., 15th ed. rev.2007). See also, Phyllis M. McKenzie, *Bankruptcy–Preferential Transfers–Ordinary Course of Business Exception Requires Objective Proof Of Industry Standards. Jones v. United Savings & Loan Ass'n,* 17 U. Ark. Little Rock L.J. 817 (1995).

The record reflects that there is undisputed sufficient evidence to establish that the payments in question were made according to industry standards and under ordinary business terms. The only industry that American Pan could fit into is the broad industry of metal stamping and forging; however, the Court finds this industry is too broad to provide the relevant industry. American Pan dominates the commercial baking pan industry in the United States to such an extent that its business practice constitutes the industry standard.[2]

Michael Miller, Chief Financial Controller for Russell T. Bundy Associate Companies,[3] testified that it was the business practice nationwide to permit customers additional time to pay invoices and that collection activity did not commence until the invoice was past due 120 days. (Tr. at 12.) He stated, "... our credit practices are kind of—I don't want to use the word lax, but we're not very tight, because we're the only manufacturer and we don't want to cause the industry too much harm. We don't want to get any upset at us." (Tr. at 36.) The range of payments for the domestic customers of American Pan for 2004 was 13 days to 210 days. (Ex. AP–4.) The blended average was 52 days. (Ex. AP–4.) American Pan made their two preference payments, on average, 76.5 days after the invoice. These payments fall well within the range for the standard in the business.

Therefore, for these reasons, American Pan has established the defense of ordinary course of business.

2. However, even if the forging and stamping of metals was in fact the industry, the payments that were made within the preference period were made according to ordinary business terms. The payments made in the metal stamping industry, for a company the size of American Pan, were made on average 64 days after the invoice. (Ex. AP–5 & Tr. at 22–23.) This average is actually closer to the average

A separate judgment pursuant to Federal Rule of Bankruptcy Procedure 9010 will be entered in favor of the Defendant.

IT IS SO ORDERED.

of the preference payments (76.5) than American Pan's average for their domestic customers (52).

3. American Pan is apparently one of the Bundy Companies. Bundy Companies are all engaged in selling equipment used in the commercial baking industry. (Tr. at 8 & 10–11.)