# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 13-6003

_____

In re: Genmar Holdings, Inc.

*Debtor*

------------------------------

Charles W. Ries

*Plaintiff - Appellee*

v.

Scarlett & Gucciardo, PA

*Defendant*

Michael Calandrillo

*Defendant - Appellant*

_____

Appeal from United States Bankruptcy Court
for the District of Minnesota - Minneapolis

_____

Submitted: June 26, 2013
Filed: August 1, 2013

_____

Before FEDERMAN, Chief Judge, SALADINO and NAIL, Bankruptcy Judges.

_____

NAIL, Bankruptcy Judge.

Michael Calandrillo appeals the final judgment of the bankruptcy court[1] entitling Trustee Charles W. Ries to recover $65,000 from Calandrillo pursuant to 11 U.S.C. §§ 547(b) and, by implication, 550(a). We affirm.

BACKGROUND

In April 2007, Calandrillo purchased a boat from Plantation Boat Mart & Marina, Inc. The boat proved to be defective, and in October 2008, Calandrillo filed a statement of claim with the American Arbitration Association, naming Genmar Industries, Inc., Hydra-Sports Boats, and Plantation Boat Mart & Marina, Inc. as respondents. Calandrillo says he filed this statement of claim in compliance with the terms of what he describes as the "pre-printed form sales contract" he signed when he purchased the boat.[2]

In February, 2009, Calandrillo entered into a settlement agreement with "Genmar Tennessee, Inc. d/b/a Hydra-Sports Boats . . . together with its officers, directors, employees, parents, subsidiaries, affiliates, dealers, agents, representatives, suppliers, insurers, successors[,] and assigns." Calandrillo agreed to convey title to the boat to Genmar Tennessee, Inc., free and clear of all liens, claims, and encumbrances. In return, Hydra-Sports Boats agreed to pay Calandrillo $205,000, with $140,000 going to GEMB Lending, Inc., which held a lien against the boat, and $65,000 going to Scarlett & Gucciardo, P.A., Calandrillo's attorneys, to be held in trust for Calandrillo.

---

[1]The Honorable Dennis D. O'Brien, United States Bankruptcy Judge for the District of Minnesota.

[2]The record on appeal includes only the first page of the sales contract, and that page does not include an arbitration clause.

In March 2009, Genmar Holdings, Inc. issued a check for $65,000 to Scarlett & Gucciardo.[3] The law firm kept $13,000 for its fee. It disbursed the balance of $52,000 to Calandrillo.

On June 1, 2009, Genmar Holdings, Inc. ("Debtor") and 21 of its subsidiaries, including Genmar Industries, Inc. and Genmar Tennessee, Inc., filed petitions for relief under chapter 11 of the bankruptcy code.[4] On November 22, 2010, the case was converted to chapter 7. Charles W. Ries ("Trustee") was appointed as trustee the following day.

On November 18, 2011, Trustee filed an adversary complaint against Scarlett & Gucciardo to avoid as a preferential transfer under 11 U.S.C. § 547, and recover under 11 U.S.C. § 550, the $65,000 payment Scarlett & Gucciardo had received from Debtor. On November 23, 2011–the day after the deadline imposed by 11 U.S.C. § 546(a) to file such a complaint against any other entity–Scarlett & Gucciardo informed Trustee it was merely a conduit and had received the $65,000 payment on behalf of a client in connection with the settlement of a lawsuit. That same day, Scarlett & Gucciardo provided a copy of the settlement agreement between Calandrillo and Genmar Tennessee, Inc. to Trustee.

On January 17, 2012, Trustee filed a motion to amend his adversary complaint to join Calandrillo as a defendant and to have the amended complaint "relate back" to the date of the original complaint. Two days later, Scarlett & Gucciardo filed a motion to dismiss the adversary proceeding. On March 22, 2012, the bankruptcy

---

[3]Why Genmar Holdings, Inc., rather than Hydra-Sports Boats, issued the check is not apparent from the record on appeal.

[4]On June 4, 2009, the bankruptcy court entered an order granting Debtor's motion for joint administration of the cases. The cases were not substantively consolidated.

court entered an order granting Trustee's motion to amend and denying Scarlett & Gucciardo's motion to dismiss.

Calandrillo and Scarlett & Gucciardo filed an answer to the amended complaint and a counterclaim against Trustee, alleging fraud by Debtor. Six months later, Trustee, Scarlett & Gucciardo, and Calandrillo all filed motions for summary judgment. On January 14, 2013, the bankruptcy court entered an order directing the entry of separate judgments in favor of Trustee on his preferential transfer claim against Calandrillo, in favor of Scarlett & Gucciardo on Trustee's preferential transfer claim against Scarlett & Gucciardo, and in favor of Trustee on Calandrillo and Scarlett & Gucciardo's fraud-based counterclaim against Trustee. In compliance with the bankruptcy court's order, the bankruptcy clerk entered three separate judgments the same day. Calandrillo timely filed a notice of appeal, seeking our review of both the bankruptcy court's summary judgment in favor of Trustee on his preferential transfer claim against Calandrillo and the bankruptcy court's earlier order granting Trustee's motion to amend his adversary complaint.

## STANDARD OF REVIEW

We review for an abuse of discretion the bankruptcy court's decision to grant Trustee's motion to amend. *American Family Mut. Ins. Co. v. Hollander*, 705 F.3d 339, 347 (8th Cir. 2013).

> A court abuses its discretion when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; or when all proper factors and no improper ones are considered, but the court commits a clear error of judgment in weighing those factors.

*City of Duluth v. Fond du Lac Band of Lake Superior Chippewa*, 702 F.3d 1147, 1152 (8th Cir. 2013).

We review *de novo* the bankruptcy court's grant of summary judgment. *Mwesigwa v. DAP, Inc.*, 637 F.3d 884, 887 (8th Cir. 2011) (citing *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010)). "We will affirm the grant of summary judgment if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(a)).[5]

DISCUSSION

Calandrillo raises three issues on appeal: (1) whether the bankruptcy court abused its discretion in allowing Trustee to amend his complaint to add Calandrillo as a defendant after the statute of limitations had expired; (2) whether the bankruptcy court erred in concluding the $65,000 payment was not a "contemporaneous exchange" within the meaning of 11 U.S.C. § 547(c)(1)(A) and (B); and (3) whether the bankruptcy court erred in concluding the $65,000 payment was not made in the "ordinary course of business" within the meaning of 11 U.S.C. § 547(c)(2)(A).[6]

*Relation Back of Amended Complaint*

With respect to the first issue, Calandrillo does not argue the bankruptcy court erred in allowing Trustee to amend his complaint. He instead argues the bankruptcy

---

[5]Federal Rule of Civil Procedure 56(a) applies in adversary proceedings. Fed.R.Bankr.P. 7056.

[6]Calandrillo does not challenge the bankruptcy court's conclusion that the $65,000 payment satisfied all the elements of a preferential transfer under 11 U.S.C. § 547(b).

court erred in allowing Trustee's amended complaint to "relate back" to the date of Trustee's original complaint. This implicates Federal Rule of Civil Procedure 15(c).[7]

> An amendment to a pleading relates back to the date of the original pleading when:
>
> > (A) the law that provides the applicable statute of limitations allows relation back;
> >
> > (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
> >
> > (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> >
> > > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> > >
> > > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed.R.Civ.P. 15(c). Thus, an amendment that adds a party relates back to the original pleading if three requirements are satisfied:

---

[7]Federal Rule of Civil Procedure 15 applies in adversary proceedings. Fed.R.Bankr.P. 7015.

> First, the claims asserted against the new party must arise out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.
>
> Second, the new party must have received such notice of the institution of the action within the period for service of the summons and complaint pursuant to Rule 4(m), so that the party will not be prejudiced in maintaining a defense on the merits.
>
> Third, the new party knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against it.

*Enron Corp. v. J.P. Morgan Securities Inc.* (*In re Enron Corp.*), 357 B.R. 257, 263 (Bankr. S.D.N.Y. 2006) (citations and internal quotation marks omitted).

Calandrillo does not argue any of these three requirements were not met in this case, and indeed he cannot. Both the original complaint and the amended complaint are premised on the $65,000 payment. Trustee filed his original complaint on November 18, 2011, and Calandrillo was aware of the adversary proceeding sometime before February 17, 2012, when he filed an objection to Trustee's motion to amend his complaint. This was well within the 120-day period provided in Rule 4(m), and Calandrillo was thereafter able to file a timely answer to the amended complaint and maintain a defense on the merits. Finally, even if Calandrillo was previously completely unaware of the adversary proceeding, Trustee's motion to amend and supporting papers explained the mistake concerning the identity of the proper party, so Calandrillo knew or should have known the preferential transfer action would have been brought against him, but for that mistake.

Calandrillo instead argues–at great length and with great passion–Trustee was to blame for the mistake in identifying the proper party, *i.e.*, Trustee should have

identified Calandrillo as the proper party in time to name Calandrillo as a defendant before the deadline imposed by § 546(a) to file a complaint under § 547. This argument, however, misses the mark.

> The question under Rule 15(c)(1)(C)(ii) is not whether [the plaintiff] knew or should have known the identity of [the prospective defendant] as the proper defendant, but whether [the prospective defendant] knew or should have known that it would have been named as a defendant but for an error. Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint.

*Krupski v. Costa Crociere S. p. A.*, ___ U.S. ___, 130 S.Ct. 2485, 2493 (2010) (emphasis in original). Thus, even if we agreed with Calandrillo's assessment of Trustee's performance of his duties–and we most emphatically do not–it would not change the outcome in this case.

Calandrillo having given us no reason to conclude otherwise, we find no abuse of discretion in the bankruptcy court's decision to allow Trustee to amend his complaint and to allow Trustee's amended complaint to relate back to the date of Trustee's original complaint.

*Contemporaneous Exchange*

With respect to the second issue, a trustee may not avoid what would otherwise be a preferential transfer under § 547(b),

> to the extent that such transfer was–

(A) *intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange* for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange[.]

11 U.S.C. § 547(c)(1) (emphasis added). The burden of proving, by a preponderance of the evidence, a transfer may not be avoided by reason of § 547(c)(1) is on the transferee. 11 U.S.C. § 547(g); *Silverman Consulting, Inc. v. Canfor Wood Products Marketing* (*In re Payless Cashways, Inc.*), 306 B.R. 243, 249 (B.A.P. 8th Cir. 2004).

"The critical inquiry in determining whether there has been a contemporaneous exchange for new value is whether the parties intended such an exchange." *Official Plan Comm. v. Expeditors Int'l of Washington, Inc.* (*In re Gateway Pacific Corp.*), 153 F.3d 915, 918 (8th Cir. 1998) (citation and internal quotation marks omitted). Calandrillo, however, focuses on the requirement that "new value" be given to the debtor and the requirement that the exchange be "substantially contemporaneous." He overlooks–or conveniently ignores–the requirement that the transfer be intended by the debtor and the creditor to be a contemporaneous exchange.

Trustee argues–without rebuttal–the only evidence of Debtor and Calandrillo's intent is found in the settlement agreement itself. That agreement was between Calandrillo and Genmar Tennessee, Inc., not Debtor. Thus, while it is certainly evidence of Genmar Tennessee, Inc. and Calandrillo's intent, we fail to see its value as evidence of Debtor's intent. As for Genmar Tennessee, Inc. and Calandrillo's intent, the settlement agreement provides:

> The remainder of the Settlement Payment shall be paid to the trust account of Scarlett and Gucciardo, P.A., in trust for and on behalf of Claimant, *no sooner* [*than*] *15 days*

-9-

*after Genmar Tennessee receives the lien waiver confirming the Bank's discharge of the lien and all title assignment documents*, e.g., executed Certificate of Title assignment for the Boat.

(Emphasis added.)

Neither § 547(c)(1) nor any other provision of the bankruptcy code defines "contemporaneous."  "In the absence of a statutory definition or clear contrary legislative intent, statutory terms are given their plain, ordinary, and commonly understood meaning[,]" and we "turn[ ] to a commonly used dictionary to ascertain a word's ordinary meaning." *Schumacher v. Cargill Meat Solutions Corp.*, 515 F.3d 867, 871 (8th Cir. 2008) (citation omitted) (referring to Merriam-Webster's Collegiate Dictionary).  Merriam-Webster's Collegiate Dictionary defines "contemporaneous" as "existing, occurring, or originating during the same time."  Merriam-Webster's Collegiate Dictionary 269 (11th ed. 2003).

It is clear from the settlement agreement Genmar Tennessee, Inc. and Calandrillo intended the exchange of "the lien waiver . . . and all title assignment documents" and the $65,000 would occur at *different* times, at least 15 days apart. Thus, they did not intend the exchange would be contemporaneous, within the plain, ordinary, and commonly understood meaning of that word.  To the extent the settlement agreement is–contrary to our firm belief, based on the record before us–somehow also evidence of Debtor's intent, we reach the same conclusion. Consequently, we agree with the bankruptcy court the $65,000 payment was not a contemporaneous exchange within the meaning of 11 U.S.C. § 547(c)(1).[8]

---

[8]Because the elements of § 547(c)(1) are in the conjunctive, we need not–and do not–reach either the issue of whether Debtor received new value from Calandrillo or the issue of whether the exchange of the lien waiver and title assignment documents and the $65,000 was in fact substantially contemporaneous.

Finally, with respect to the third issue, a trustee may also not avoid what would otherwise be a preferential transfer under § 547(b),

> to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was–
>
> > (A) made in the ordinary course of business or financial affairs of the debtor and the transferee[.]

11 U.S.C. § 547(c)(2). The burden of proving a transfer may not be avoided by reason of § 547(c)(2) is again on the transferee. 11 U.S.C. § 547(g). Such a transferee must demonstrate, by a preponderance of the evidence, both the transfer was in payment of a debt incurred in the ordinary course of business and the transfer was, subjectively, in the ordinary course of business between the debtor and the transferee, *i.e.*, there was some consistency between the transfer at issue and other transfers between these parties. *Shodeen v. Airline Software, Inc.* (*In re Accessair, Inc.*), 314 B.R. 386, 392 (B.A.P. 8th Cir. 2004)*; Harder v. Columbia Glass & Mirror, Inc.* (*In re Graff*), 454 B.R. 745, 751 (Bankr. W.D. Mo. 2011).

Calandrillo argues–without distinguishing between the requirement that the debt must be incurred in the ordinary course of business or financial affairs of the debtor and the transferee and the separate and distinct requirement that the transfer must be made in the ordinary course of business or financial affairs of the debtor and the transferee–"Debtor's pre-printed form sales contract required arbitration to resolve any dispute," concluding "[c]learly, using arbitration proceedings to effect the return of defective boats was Debtor's customary or ordinary course of business." This argument is without merit, for myriad reasons, not the least of which is Calandrillo

has not provided any authority that suggests arbitration is in the ordinary course of a party's business or financial affairs or that suggests merely including an arbitration clause in a contract necessarily means arbitration is then in the ordinary course of a party's business or financial affairs.[9]

First, as noted above, the record on appeal includes only the first page of the sales contract, and that page does not include an arbitration clause. Consequently, we cannot even confirm whether the sales contract actually included an arbitration clause, much less conclude such an arbitration clause evidences the ordinary course of Debtor's business or financial affairs.

Second, the first page shows the sales contract was between Calandrillo and Plantation Boat Mart & Marina, Inc., not Debtor. Whatever it may say about the ordinary course of Plantation Boat Mart & Marina, Inc.'s business or financial affairs, Calandrillo has not demonstrated any arbitration clause in the sales contract, standing alone, says anything about the ordinary course of Debtor's business or financial affairs.

Third, the record on appeal does not demonstrate Debtor was a party to the arbitration proceeding. Calandrillo named Genmar Industries, Inc., Hydra-Sports Boats, and Plantation Boat Mart & Marina, Inc., not Debtor, as respondents, and he entered into a settlement agreement with Genmar Tennessee, Inc., not Debtor. Whatever it may say about the ordinary course of Genmar Industries, Inc., Hydra-Sports Boats, Plantation Boat Mart & Marina, Inc., and Genmar Tennessee, Inc.'s

---

[9]Calandrillo also fails to address or distinguish the persuasive authority cited by the bankruptcy court and Trustee. *See*, *e.g.*, *In re Accessair, Inc.*, 314 B.R. 386 (B.A.P. 8th Cir. 2004) (cited by Trustee); *In re Valley Steel Products Co., Inc.*, 214 B.R. 202 (E.D. Mo. 1997) (cited by Trustee); *In re Sibilrud*, 308 B.R. 388 (Bankr. D. Minn. 2004) (cited by both); *In re Mastercraft Graphics, Inc.*, 157 B.R. 914 (Bankr. S.D. Fla. 1993) (cited by both).

business or financial affairs, Calandrillo has likewise not demonstrated the arbitration proceeding, standing alone, says anything about the ordinary course of Debtor's business or financial affairs.

Fourth, even if Debtor were a party to the sales contract, we do not agree the mere inclusion of an arbitration clause necessarily means using arbitration proceedings was in the ordinary course of Debtor's business or financial affairs. We cannot tell from the record on appeal, *e.g.*, whether, or how often, Debtor produced defective boats, whether, or how many, other customers had purchased defective boats, whether, or how often, an arbitration clause was included in Debtor's other sales contracts, whether, or how often, any such arbitration clause had been invoked, or whether, or how often, it had been enforced. Without such evidence, we cannot say arbitration proceedings were in the ordinary course of Debtor's business or financial affairs.

Fifth, Calandrillo does not even discuss whether Debtor's obligation to make the $65,000 payment was incurred in the ordinary course of *Calandrillo's* business or financial affairs or whether the $65,000 payment was made in the ordinary course of *Calandrillo's* business or financial affairs, much less point us to that part of the record on appeal that demonstrates either to be the case. The absence of such evidence is fatal to his defense.

For all these reasons, we agree with the bankruptcy court the $65,000 payment was not made in the ordinary course of business within the meaning of 11 U.S.C. § 547(c)(2)(A).

## CONCLUSION

We find no abuse of discretion in the bankruptcy court's decision to allow Trustee to amend his complaint and to allow Trustee's amended complaint to relate

back to the date of Trustee's original complaint.  We likewise find no error in either the bankruptcy court's conclusion that the $65,000 payment was not a contemporaneous exchange within the meaning of 11 U.S.C. § 547(c)(1) or the bankruptcy court's conclusion that the $65,000 payment was not made in the ordinary course of business within the meaning of 11 U.S.C. § 547(c)(2)(A).  Consequently, we affirm the final judgment of the bankruptcy court entitling Trustee Charles W. Ries to recover $65,000 from Michael Calandrillo pursuant to 11 U.S.C. §§ 547(b) and, by implication, 550(a).

———————————————